RECEIVED
IN LAFAYETTE, LA.

NOV 0 2 2007
ᴍᴄᴍ
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| PAULA AND LEE STEVENS | § | CIVIL ACTION NO. 2:06-CV-01885 |
| | § | |
| Plaintiffs | § | |
| | § | |
| VERSUS | § | JUDGE MINALDI |
| | § | |
| AUTO CLUB FAMILY INSURANCE COMPANY | § | |
| | § | |
| | § | |
| Defendant | § | MAGISTRATE JUDGE WILSON |

### DEFENDANT'S PRE-TRIAL STATEMENT

Counsel for Defendant, AUTO CLUB FAMILY INSURANCE COMPANY ("AAA") submits the following Pretrial Statement to the Court and opposing counsel:

1. Jurisdiction:

   Diversity jurisdiction exists pursuant to 28 U.S.C. § 1441, as there exists complete diversity of citizenship between all Plaintiffs and the Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs, as required under 28 U.S.C. § 1332.

2. Additional Pleadings to be Filed Before Trial:

   Defendant anticipates filing an additional Motion in Limine regarding any evidence (including testimony and/or documentary evidence) from "All Pro Remodeling", as no individual person affiliated with this entity has ever been identified as a potential witness at trial, the company cannot be found at the address and telephone number previously furnished, and there is no record of this company being licensed to do business as a contractor in Louisiana (i.e., no record of existence with either the

Louisiana State Board for Licensing of Contractors or the Louisiana Secretary of State).

3. Pending Motions:

Pending motions include Defendant's Motion for Trial Continuance, Defendant's Motion in Limine to Exclude or Limit Testimony of Cal Chambers and Alternative Motion for Continuance, Defendant's Motion in Limine to Exclude Expert Testimony Regarding Mold-Related Damages, and Defendant's Motion in Limine Regarding Louisiana's "Valued Policy Law".

4. Brief Summary of Case:

This is a claim under a homeowner's policy issued by AAA to Plaintiffs Paula and Lee Stevens for damages resulting from Hurricane Rita. Plaintiffs also allege insurance bad faith and seek recovery of statutory penalties and attorney's fees. The residence is located at 101 Beau Clos in the Grand Lake area of Cameron Parish, right on the Calcasieu Parish line.

In the aftermath of Hurricane Rita on 9/24/2005, a claim under the Stevens homeowner's policy was reported to AAA, which set up a file on 10/3/2005. An initial payment of $2,500 was made due to the evacuation of Cameron Parish ordered by civil authorities.

On 10/17/2005, adjuster Bill Dawkins with Reliable Adjusting Company inspected the damage to the residence with the insured. The adjuster noted the need to determine the cause of the loss at that time. He found wind damage to the east slope of the roof, and extensive water damage to the interior and exterior walls but no ceiling damage.

Due to the uncertain scope of damage caused by a covered cause of loss (i.e., wind-driven rain versus flooding), a re-inspection was conducted on 11/05/2005, again by Mr. Dawkins. He completed his adjustment of the loss and estimate on 11/23/2005. Mr. Dawkins estimated repairs under Coverage A, Structure, at $109,831.47 actual cash value, $120,857.05 replacement cost. Recoverable depreciation was $10,025.58. This estimate included, but was not limited to, replacement of the roof (65.1 squares of three tab, 25 year asphalt shingles), 245 linear feet of drip edge, replacement of the chimney cap, drywall and baseboard repairs in rooms located on both the first and second floors. Damage under Coverage B, Other Structures, was estimated at $3,460.81 actual cash value.

After receiving the estimate under Coverage A & B, AAA issued payment in the amount of $113,292.28 on 12/20/2005. The check was sent by overnight delivery as requested by Paula Stevens.

Although Plaintiffs complain that AAA failed to timely initiate adjustment of the claim pursuant to La. R.S. 22:658 and/or La. R.S. 22:1220, following Hurricane Rita on 9/24/2005, AAA initiated its investigation of the claim no later than October 3, 2005, and had completed its adjustment of the claim by November 23, 2005, well within the 30 and 60 day statutory time periods contemplated under La. R.S. 22:658 and La. R.S. 22:1220. Photographic evidence to be introduced at trial will show that the payments made by AAA were adequate to repair the physical damage to Plaintiffs' residence caused by Hurricane Rita, except that Plaintiffs chose not to fix some of the items for which they had been paid.

With respect to recoverable depreciation, by letter dated 12/07/2005, Paula Stevens was notified that depreciation was applied on several items, and was advised to refer to the estimate for a detailed breakdown of the depreciated items. **"In order to recover this depreciated amount, you must make claim within 180 days of the loss date and after completion of work. If you choose to have the work done and make claim for the depreciated amount, please forward a verified receipt showing the work was completed and what was billed."** This was never done. Thus, AAA's obligation under the terms of its policy to pay the depreciated amounts, rather than replacement cost value, has been completely discharged.

Plaintiffs' contents claim under Coverage C, and their claim for Additional Living Expense (ALE) under Coverage D, are vigorously contested by AAA. With respect to Coverage C, Contents, it is Defendant's position that at no point in time (up to and including today) have Plaintiffs **ever** furnished AAA with a "satisfactory proof of loss" showing the extent of their covered contents losses under Coverage C of their homeowner's policy. Furthermore, AAA's policy provides a ten thousand dollar ($10,000) limit of liability for damages caused by mold, under a policy endorsement entitled "Limited Fungi, Wet or Dry Rot, or Bacteria Coverage – Louisiana." This special limit of liability has already been paid. At no point in time has Plaintiffs' proof of loss (nor AAA's own independent investigation) substantiated damage to personal property in excess of $10,000 that <u>was not</u> caused by either flooding or mold.

Finally, Defendant contends that it has dealt fairly and in good faith with its insured under Coverage D, ALE, despite gross overreaching on the part of Plaintiffs. After

making an initial advance under Coverage D of $2,500, on 1/18/2006, Paula Stevens was informed by Todd Rader (a claims supervisor with AAA) that payments under Coverage D for either "Additional Living Expense" or "Fair Rental Value" had been approved, but the details of such payments needed to be worked out.

Plaintiff claimed entitlement to $6,000 per month rent for their house, because of the square footage, amenities, and special handicap-accessible features of the home. AAA offered to pay the insured FRV of $4,800 per month *unless* she could provide AAA with a signed lease agreement showing that she was actually paying $6,000 a month rental. Paula Stevens represented that she had a signed lease agreement and would fax it to AAA. She then sent a rental agreement that she had signed with an apparent third-party company called Southern Rental Services. It turned out, however, that Plaintiff was actually seeking $6,000 a month based on a rental agreement she had signed with herself. Plaintiff claims that this "documentation" was known and authorized by AAA, which is a disputed issue of fact.

An examination under oath (EUO) of Paula Stevens was completed on March 23, 2006. At that time, Ms. Stevens testified that she and her family were residing at 3693 Heather Lane, Lake Charles, Louisiana 70605. This was a residence which she had owned for the past fifteen years. She testified that she and her family had been living in the residence at 101 Beau Clos in Cameron Parish for sixteen months prior to Hurricane Rita. After consideration of Paula Stevens' EUO, it was determined AAA would offer $4,800 per month for nine months (the estimated length of time for repairs to be completed), representing the competitive market price of a similar rental

property prior to the storm, or $43,200. Subtracting the $2,500 previously advanced resulted in a net payment of $40,700.00 on 4/25/2006.

AAA's correspondence to the insured dated 4/25/2006 stated that in computing its payment under Coverage D, and specifically, the nine-month period during which it was estimated that necessary repairs could be completed, "[f]rom that point on [i.e., June 24, 2006], we will pay based on what has been incurred." *No documentation of any additional living expenses or rental charges actually incurred by the insured more than nine months from the date of loss on 9/24/2005 has been furnished at any point in time.* The check issued in the amount of $40,700 was never refused by the insured or returned to AAA. Therefore, from AAA's perspective, its obligations under Coverage D have been completely discharged.

5.  Issues of Fact:

    a.  Whether Plaintiffs are contractually owed anything more than what they have already been paid under Coverages A, B, C & D of the AAA homeowner's policy?

    b.  Whether Plaintiffs have submitted an adequate proof of loss for covered contents damages under Coverage C, so as to trigger AAA's statutory duty to make timely payment following satisfactory proof of loss?

    c.  Whether Plaintiffs alleged contents damages, to the extent proven at trial, exceed the $10,000 special limit of liability under the "Limited Fungi, Wet or Dry Rot, or Bacteria Coverage – Louisiana" endorsement to the AAA policy?

    d.  Whether all or a very substantial part of Plaintiffs' alleged interior damages were caused by flooding?

6

e. Whether the residence sustained actual structural damage, as alleged by Plaintiffs, or merely roof damage in the form of missing shingles and fascia as can be seen from the photographs?

f. Whether the damages to the structure represent a constructive total loss.

6. Issues of Law:

a. Those issues of law subsumed by the contested issues facts;

b. Judicial construction of the coverage terms and limits of liability under AAA's homeowner's policy;

c. Whether Louisiana's "Valued Policy Law" applies?

d. Whether AAA is liable for statutory penalties and attorney's fees as alleged by Plaintiffs under La. R.S. 22:658 and/or La. R.S. 22:1220?

e. Retroactivity of legislative amendments to Louisiana's bad faith statutes.

7. List of Witnesses: (Divided by "Will Call" and "May Call")

***Will Call:***

| | |
|---|---|
| Mitash Patel (Expert)<br>Trinity Insurance Services<br>600 Mariners Plaza, Suite 607<br>Mandeville, LA 70448<br>888 – 370 – 8484 | Will call regarding his inspection on 4/6/07 and Trinity estimate dated 9/3/07; also re: authentication of photographs |
| Tommie McMorris (Expert)<br>Trinity Insurance Services<br>12466 Highway 190<br>Hammond, LA 70401<br>(985) 542-8995 | Will call regarding his inspection on 4/6/07 and Trinity estimate dated 9/3/07; also re: authentication of photographs |
| J. Craig Morice (Fact Witness)<br>Automobile Club Family Ins. Co.<br>3445 North Causeway Blvd.<br>Suite 200<br>Metairie, LA 70002<br>(314) 753-3058 | Will call regarding his contents inspection on 10/24/07 and re: authentication of photographs |

| | |
|---|---|
| James R. Danner (Expert)<br>Denson Engineers, Inc.<br>2030 Dickory Ave., Suite 104<br>New Orleans, LA 70123<br>(504) 561-1131 | Will testify regarding his reports dated 8/30/2006 and 9/10/2007, and re: his observations of the nature of the damage to the Stevens residence and probable causes; also relevant weather data |

*May Call:*

| | |
|---|---|
| Steve Bruening (Fact Witness)<br>AAA Missouri /<br>Automobile Club Inter-Ins. Exch.<br>12901 North Forty Drive,<br>St. Louis, MO 63141<br>(314) 523-6962 | Adjustment of Plaintiffs' claim |
| Adam Dohm (Fact Witness)<br>AAA Insurance<br>P.O. Box 66502<br>St. Louis, MO 66502<br>1-800-222-7623 | Adjustment of Plaintiff's claim<br>Anticipated rebuttal witness |
| John Temperato (Fact Witness)<br>AAA Insurance<br>P.O. Box 66502<br>St. Louis, MO 66502<br>1-800-222-7623 | Adjustment of Plaintiff's claim<br>Anticipated rebuttal witness |

8. Exhibits:

   a. Photographs of Stevens residence taken on 4/6/2007 by Mitash Patel and Tommie McMorris, Trinity Insurance Services.

   b. Photograph dated 9/29/2005 of rear exposure / eastern exposure of Stevens residence.

   c. Floor plan diagram of Stevens residence prepared by Denson Engineers and attached to Jim Danner's 8/30/2006 report.

d. Louisiana Hurricane Rita Surge Inundation and Advisory Base Flood Elevation Map Panel Index for Cameron Parish, dated March 2006 by the Federal Emergency Management Administration (FEMA), U.S. Department of Homeland Security.

e. Reliable Adjusting Estimate prepared by Bill Dawkins on 11/23/2006 with attached photographs.

f. Final Revised Report / Estimate prepared by Trinity Insurance Services dated 9/3/2007, showing ACV of estimated structural repairs under Coverage A and ACV of repairs to other structures under Coverage B.

g. Expert reports prepared by Jim Danner, P.E. with Denson Engineers, Inc., dated 8/30/2006 and 9/10/2007.

h. Photo disk attached as Exhibit 2 to the Deposition of Cal Chambers (only if Defendant's Motion in Limine Regarding Mold-Related Damages is denied).

i. Any or all photo disks produced by Plaintiffs at any point in time, including disks produced by Sumpter Law Offices, APLC, photo disks produced at the Deposition of Paula Stevens on 7/3/2007, and any photos or photo disks furnished by Plaintiffs to either Cal Chambers or Charles Norman, P.E.

j. Written Proof of Loss prepared by Paula Stevens and other family members, submitted with transmittal letter dated 6/30/2006 from the Sumpter Law Offices, APLC (Exhibit 4 to Deposition of Paula Stevens).

k. Affidavit of Paula Stevens executed on October 29, 2007, with color-coded Contents Inventory.

l. Unexecuted affidavit submitted for execution by Paula Stevens *as submitted by defense counsel on October 26, 2007* (prior to changes in wording).

m. Photo disk of contents taken by J. Craig Morice at Stevens residence on 10/24/2007.

n. Photos taken by Charles Norman in January 2006 and produced at the Deposition of Charles Norman on 10/31/2007.

o. Certified copy of the AAA homeowner's policy issued to Lee and Paula Stevens and providing coverage according to its terms on 9/24/2005 (to the Court only for purposes of construing relevant coverage provisions and establishing the policy's limits of liability).

9. Depositions:

The following depositions may be offered by Defendant in whole or in part:

***Examination under oath of Paula Stevens:***

Examination under oath at page 28, lines 2 – 8.

***Deposition of Paula Stevens:***

Deposition of Paula Stevens at page 21, lines 5 – 24;

Deposition of Paula Stevens at page 23, lines 4 – 20;

Deposition of Paula Stevens at page 27, line 17 through page 28, line 9, and at page 28, line 11 through page 30, line 16;

Deposition of Paula Stevens at page 31, lines 3 – 19;

Deposition of Paula Stevens at page 38, line 10 through page 43, line 6;

Deposition of Paula Stevens at page 46, line 22, with "Just so that you're clear…", through page 49, line 13;

Deposition of Paula Stevens at page 50, line 16 through page 54, line 22;

Deposition of Paula Stevens at page 55, lines 6 – 25;

Deposition of Paula Stevens at page 56, line 10 through page 57, line 15;

Deposition of Paula Stevens at page 57, line 25 through page 58, line 17;

Deposition of Paula Stevens at page 74, line 12 through page 75, line 7; and

Deposition of Paula Stevens at page 103, lines 4 – 9.

***Deposition of Lee Stevens:***

Deposition of Lee Stevens at page 15, lines 7 – 22;

Deposition of Lee Stevens at page 25, lines 2 – 22; and

Deposition of Lee Stevens at page 27, lines 9 – 11.

***Deposition of Cal Chambers:***

Deposition of Cal Chambers at page 76, lines 12 through 20; and continuing at page 77, line 12 through page 78, line 13.

10. Stipulations:

Defendant stipulates that AAA's limit of liability under Coverage A, Structure, is $312,000.00. For Coverage B, Other Structures, the limit of liability is $31,200.00. For Coverage C, Contents, the limit of liability is $234,000.00, except for contents damages caused by mold, which are limited by special endorsement to $10,000.

11. Probable Length of Trial:

Defendant estimates that it will take 4 to 5 days to try the case, including jury selection.

12. <u>Other Matters that Should be Made Known to the Court:</u>

Defendant is willing to participate in a Settlement Conference with a representative of AAA possessing full settlement authority being present. Non-binding mediation with a private mediator was attempted but was unsuccessful.

Date: 11/02/07    Signature: /s/ Bruce D. Beach

Printed Name: Bruce D. Beach

**Respectfully submitted:**

UNGARINO & ECKERT L.L.C.

/s/ Bruce D. Beach
WILLIAM H. ECKERT (#18591)(T.A.)

BRUCE D. BEACH (#25569) (T.A.)
315 South College Road, Suite 239
Lafayette, Louisiana 70503
Telephone: *337/235-5656*
Fax: 336/217-8616
bbeach@ungarino-eckert.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing pleading upon all counsel of record, by hand delivery on November 2, 2007, addressed as follows:

Mr. Clayton Davis
LUNDY & DAVIS
501 Broad Street
P.O. Box 3010
Lake Charles, LA 70602

/s/ Bruce D. Beach
BRUCE D. BEACH

12