
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

DEC - 3 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| PAULA AND LEE STEVENS | : | DOCKET NO. 2:06 CV 1885 |
| VS. | : | JUDGE MINALDI |
| AUTO CLUB FAMILY INSURANCE COMPANY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Judgment as a Matter of Law and Alternative Motion for New Trial [doc. 148], filed by the defendant Auto Club Family Insurance Company (hereinafter "AAA"). The plaintiffs, Paula and Lee Stevens, filed an Opposition [doc. 153]. AAA filed a Reply [doc. 159].

## PROCEDURAL HISTORY

The plaintiffs filed suit against AAA, their insurer, in the 36th JDC for damages sustained to their home during Hurricane Rita.[1] AAA removed the case to federal court on October 23, 2006.[2] The jury rendered a verdict in favor of the plaintiffs on June 26, 2008.[3]

The jury found that AAA owed the plaintiffs $207,408.53 for Coverage A–dwelling, $3,460.81 for Coverage B–appurtenant structures, $101,428 for Coverage C–contents, and

---

[1] Compl. [doc. 1].

[2] Notice of Removal [doc. 3].

[3] Verdict Sheet [doc. 145].

1

$24,100 for Coverage D–additional living expenses.[4] The jury found that the plaintiffs did not fail to mitigate damages.[5] While the jury concluded that AAA did not fail to initiate loss adjustment within thirty days of notification of the claim and AAA did not fail to pay a settlement within thirty days after an agreement to do so was reduced to writing, the jury did find that AAA failed to make a written offer to settle the claim within thirty days after the initial adjustment of the property.[6]

The jury also found that the January 2006, June 30, 2006, May 25, 2007, and November 20, 2007 estimates were satisfactory proofs of loss.[7] Next, the jury concluded that AAA's failure to pay those proofs of loss within sixty days was arbitrary, capricious, or without probable cause, such that AAA owed the plaintiffs $137,500 for AAA's breach of obligation of good faith and fair dealing.[8] Lastly, the jury awarded the plaintiffs $275,000 in penalties.[9]

In response to the jury's verdict, AAA filed this renewed motion requesting judgment as a matter of law, or alternatively, a new trial.

## MOTION FOR JUDGMENT AS A MATTER OF LAW

AAA renews its motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50(b). Pursuant to Fed. R. Civ. P. 50(b),

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

2

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the judgment...the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Under Rule 50, "judgment as a matter of law is appropriate only where there is no legally sufficient basis for a reasonable jury to find for [a] party." *Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 549 (5th Cir. 2005) (internal quotations omitted). The court is instructed to "view the entire trial record in the light most favorable to the non-movant and draw all inferences in its favor." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1323 (5th Cir. 1994).

"In considering a Rule 50 motion, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party; the court may not make credibility determinations or weigh the evidence, as those are jury functions." *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 362 (5th Cir. 2004). "In reviewing the record as a whole, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (citation and internal quotations omitted). In resolving the motion, the court may: "(1) allow judgment on the verdict, if the jury returned a verdict, (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

3

### A.) Jury Findings Nos. 1(A) and 1(C)

AAA argues that there was insufficient evidence to support an award of $207,408.53 under Coverage A–dwelling and an award of $101,428 under Coverage C–contents. The jury's Coverage A award reflects AAA's policy limits minus the amount already paid to the plaintiffs. AAA maintains that the evidence at trial "conclusively establishes" that the plaintiffs' residence was not a constructive total loss. AAA states that the only evidence contradicting the accuracy of the Reliable estimate were estimates prepared by Cal Chambers and the expert opinion of Charles Norman.[10] AAA objects to Norman's testimony because it disregards the results of two independent moisture surveys to which the plaintiffs stipulated as being reasonable.

At trial, Norman testified that Hurricane Rita rendered the dwelling a "constructive total loss."[11] A "constructive total loss," according to Norman, is when the repairs needed cost more than the value of the home.[12] Because Norman, an expert in the field of engineering with a subspeciality in wind engineering, testified that the plaintiffs' home was a constructive total loss, the jury had a legally sufficient basis to award the plaintiffs the policy limits under Coverage A minus the amount AAA already paid.

As for the award of $101,428 for contents under Coverage C, this Court also finds the jury had a sufficient basis for its award. The plaintiffs had $234,000 in contents coverage.[13] Paula Stevens testified that she submitted twenty-six pages of contents inventory, as well as

---

[10] Norman's expert testimony was admitted over AAA's *Daubert* objection.

[11] Trial Transcript [doc. 150-2], p. 110.

[12] *Id.*

[13] *Id.* at 61.

4

several photographs.[14] Paula Stevens testified she asked AAA to come and conduct a contents inventory, but AAA instructed her to take photographs and submit an explanation.[15] Based upon photographs and information provided by Paula Stevens, Chambers used a computer program to compile an estimate of contents losses.[16] Chambers concluded that the actual contents loss was valued at $205,203.47.[17] Because the jury had a sufficient legal foundation based on Chambers' testimony, this Court shall not disturb the jury award of $101,428 for contents under Coverage C.

Next, AAA argues that there was no evidence that the Reliable estimate from November 23, 2005 was so grossly insufficient that AAA's payment of $104,428.50 was arbitrary, capricious, vexatious, or without any reasonable basis. The plaintiffs argue that the basis for the bad faith findings were due to AAA ignoring satisfactory proofs of loss submitted in January 2006, June 2006, May 2007, and November 2007. This Court agrees and finds the jury's conclusion is supported by legally sufficient evidence.[18]

---

[14] *Id.* [doc. 150-1], pp. 26-27.

[15] *Id.* at 27.

[16] Trial Transcript [doc. 150-2], p. 110.

[17] *Id.* at 61.

[18] The verdict sheet asked whether the jury found by a preponderance of the evidence that the January 2006, June 30, 2006, May 25, 2007, and November 20, 2007 estimates were satisfactory proofs of loss under the AAA policy. Verdict Sheet Nos. 6-9 [doc. 145]. The verdict sheet then asked whether the jury found by a preponderance of the evidence that AAA's failure to pay within sixty days was arbitrary, capricious, or without probable cause. *Id.* at 10. The jury found that each of the estimates were satisfactory proofs of loss, and found that AAA's failure to pay each proof of loss was arbitrary and capricious. *Id.* at 6-10. Based on these responses, the jury awarded the plaintiffs $137,500 for AAA's breach of its obligation of good faith and fair dealing. *Id.* at 12.

5

### B.) Jury Findings Nos. 8, 9, 10, 12

Next, AAA maintains that there was insufficient evidence to support the jury's conclusion that the estimates dated May 25, 2007 and November 20, 2007 constituted satisfactory proofs of loss, and that AAA acted arbitrarily, capriciously, or without probable cause in denying payment. AAA further argues that there was no competent evidence introduced at trial to support the jury's finding that the plaintiffs suffered $137,500 in actual damages as a result of a breach of the duty of good faith and fair dealing. AAA argues that the insurer's conduct is assessed for whether it was arbitrary, capricious, or without probable cause based on the facts known at the time of decision. Because the Chambers estimates came after the $114,428.50 payment and after its own inspector concluded the house was in good shape and filled with replacement contents, AAA concludes that it had a reasonable basis to deny payment, and thus its actions could not have been arbitrary and capricious.

AAA also suggests that Norman's July 25, 2006 report could not support a finding that it acted arbitrarily and capriciously because it was not furnished to AAA until April 2007, after AAA received a report from a structural engineer who concluded there was no evidence of structural damage, and the plaintiffs were again residing in their home and all repairs had been completed. The plaintiffs argue that Chambers' estimates added to the square footage the Reliable adjuster used, since that estimate only went from the floor up to four feet. Thus, Chambers estimated the repairs by adding on square footage. Even though repairs were performed, there was testimony that the repairs were not finished and they were not done properly.

Chambers testified that he compiled estimates based on photographs and an inspection of

the house to determine what repairs should have been made.[19] He went to the home between seven and ten times.[20] From these visits, he produced the estimates dated May 25, 2007 and November 20, 2007. The jury accepted these reports as satisfactory proof of loss.[21] Even though the proof of loss came after AAA tendered $114,428.50 does not mean the failure to pay additional amounts was not arbitrary and capricious. The jury found that AAA's failure to pay the amounts from the May 25, 2007 and November 20, 2007 estimates within sixty days was arbitrary, capricious, and without probable cause.[22] Adhering to the Rule 50(b) standard, drawing all reasonable inferences in favor of the nonmoving party, avoiding credibility determinations, and not weighing the evidence, this Court finds that the jury had a sufficient factual basis to reach its conclusions on questions 8, 9, 10, and 12.

C.) Jury Findings No. 11

AAA also argues that the jury's response to question 11, by which the jury concluded that AAA did not misrepresent pertinent facts of the insurance policy provisions relating to any coverages at issue in its dealing with the plaintiffs, is irreconcilable with the jury's conclusions in questions 1(A) and 1(C), where the jury awarded the plaintiffs an additional $308,836.53.[23] AAA argues that if the Reliable estimate was arbitrary, capricious, or in bad faith, then the scope of repairs, $104,591.50, would be an actionable misrepresentation of the plaintiffs' property

---

[19] Trial Transcript [doc. 150-2], p. 92.

[20] *Id.* at 94.

[21] Verdict Sheet Nos. 8, 9 [doc. 145].

[22] *Id.* at 10.

[23] Verdict Sheet Nos. 1(A) and (C), 11 [doc. 145].

damage. AAA argues that if the estimate was not arbitrary, capricious, or vexatious, then AAA cannot reasonably be found in bad faith for paying the claim in accordance with the Reliable estimate.

Question 11 asks whether "AAA made misrepresentations of pertinent facts or insurance policy provisions relating to any coverages at issue."[24] The jury concluded AAA did not. This finding is not inconsistent, as AAA argues, with the jury's award in 1(A) and 1(C) for an additional $308,836.53. The jury did not find that AAA misrepresented pertinent facts or policy provisions, but the jury did find that AAA owed the plaintiffs more money for their dwelling and contents claim based on the evidence the plaintiffs presented. It is within the province of the jury to make factual and credibility determinations, and the jury concluded that the Reliable estimate did not reflect the extent of the plaintiffs' damage.

### D.) Jury Findings No. 13

AAA also argues that the jury's conclusion that AAA knew or should have known that its actions were likely to cause mental anguish to the plaintiffs was against the great weight of evidence. AAA argues that in *Sher v. Lafayette Ins. Co.*, 07-2411 (La. 4/8/2008); 988 So.2d 186, 202, the Louisiana Supreme Court noted that breach of insurance contracts are typically limited to pecuniary loss.

To recover for mental anguish, the plaintiffs had to prove they "intended to gratify a significant nonpecuniary interest by way of the contract," the insurance company "must or should know that failure to perform would cause nonpecuniary loss, and the insurance company must have "intended...to aggrieve the feelings of the obligee.'" *Aucoin v. S. Quality Homes, LLC*, 07-

---

[24] *Id.*

8

1014 (La. 2/26/2008); 984 So.2d 685, 696-97 (internal quotations omitted). In *Sher*, the Louisiana Supreme Court upheld the trial court's refusal to instruct the jury on damages regarding mental anguish arising from a breach of an insurance contract. 988 So.2d at 202. Although the plaintiff in *Sher* demonstrated his mental anguish, the court concluded "there was no evidence, either on the record or in proffer, as to [the insurer's] actions which demonstrated that 'the obligor intended, through his failure, to aggrieve the feelings of the obligee.'" *Id.*

In *Veade v. Louisiana Citizens Prop. Corp.*, 2008-0251 (La. App. 4 Cir. 6/4/08); 985 So.2d 1275, 1281, Louisiana's Fourth Circuit concluded the insurer intended to aggrieve the plaintiffs. LCPIC told the plaintiffs that the adjuster never submitted a report, when in fact, he classified their property as a total loss. *Id.* Then LCPIC told the plaintiffs the report was incomplete, and reassigned the claim to a new adjuster. *Id.* The plaintiffs testified that the new adjuster would not return phone calls. *Id.* LCPIC failed to pay undisputed losses for months while these reports were finalized. *Id.* Further, LCPIC was aware that Mrs. Veade entered counseling as a result of handling the claims process. *Id.* Given this record, Louisiana's Fourth Circuit upheld an award of mental damages, concluding that the trial court was correct in finding the insurer intended to delay payment and decrease liability, and that the insurer knew of Mrs. Veade's mental anguish due to the claims process. *Id.*

Paula Stevens testified that she suffered mental anguish.[25] A finding of mental anguish also requires evidence that AAA knew or should have known its actions would cause the plaintiffs nonpecuniary loss, and that AAA intended to aggrieve the feelings of the plaintiffs. Ms. Stevens testified that she waited until January 2006 to receive an incomplete estimate of

---

[25] *See, e.g.*, Trial Transcript [doc. 150-2], p. 35.

9

whether the house was unliveable.[26] Ms. Stevens also testified that AAA would not discuss coverage of her family's additional living expenses for several months until AAA knew her house was truly unliveable.[27] Ms. Stevens testified that in November 2005, AAA told her they overnighted her a check that did not arrive until December 30, 2005, and that several phone calls to AAA were met by a message instructing her to call back later.[28] AAA refused to send an adjuster to investigate the plaintiffs' contents claim.[29]

Considering the evidence, this Court finds that there is a legally sufficient basis for the jury to conclude that AAA knew or should have known its actions would cause the plaintiffs nonpecuniary loss, and that AAA intended to aggrieve the feelings of the plaintiffs.

E.) Jury Findings Nos. 12 & 15

AAA lastly argues that the evidence introduced at trial negates the jury's award of $137,500 in actual damages for breach of the duty of good faith and fair dealing, and two times that amount as a statutory penalty. AAA argues that this is in error, because the homeowner's policy limits liability for the dwelling for the amount necessary to repair the dwelling. AAA further states it was prevented from cross-examining Ms. Stevens and the plaintiffs' expert witnesses on this issue.

The plaintiffs maintain that the $137,500 damages award is supported by the living

---

[26] *Id.* at 17 [doc. 150-1].

[27] *Id.*

[28] *Id.* at 18.

[29] *Id.* at 27.

conditions they were subjected to for fifteen months while this claim was processed. The plaintiffs further maintain this level of award is comparable to similar insurance cases under Louisiana law. *See, e.g., Orellana v. Louisiana Citizens Prop. Ins. Corp.*, 07-1095 (La. App. 4 Cir. 12/5/07); 972 So.2d 1252, 1255-56 (upholding a trial court's $125,000 damages award to a homeowner for "mental anguish, stress, and inconvenience sustained as a result of [defendant insurer's] bad faith to properly and timely adjust this claim").

The jury's award of $137,500 for AAA's breach of good faith and fair dealing has a legally sufficient basis. Moreover, the jury's award of $275,000, double the amount awarded for the breach of good faith and fair dealing, was within penalties permitted pursuant to La. Rev. Stat. Ann. § 22:1220(C).

## ALTERNATIVE MOTION FOR A NEW TRIAL

AAA alternatively moves for a new trial pursuant to Fed. R. Civ. P. 59. Under Fed. R. Civ. P. 59, "the court may, on motion, grant a new trial on all or some of the issues–and to any party...after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law...." Fed. R. Civ. P. 59(a)(1)(A). "The Fifth Circuit has held that a new trial may be granted if 'the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course.'" *Moore v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 239832, *3 (E.D. La. Jan. 28, 2008) (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985)).

A new trial is warranted if the first trial resulted in a "miscarriage of justice." *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980). Trial courts "sparingly" grant new

trials for finding a jury's verdict is contrary to the weight of evidence or that a miscarriage of justice has occurred. *Id.* "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999). This Court does not find that AAA has met its high burden of demonstrating a new trial is warranted, and accordingly,

IT IS ORDERED that AAA's Motion for Judgment as a Matter of Law and Alternative Motion for New Trial [doc. 148] is hereby DENIED.

Lake Charles, Louisiana, this 2 day of Dec, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE